DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, David M. Dreyer, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order denying relator's application for permanent total disability compensation and to find that relator is entitled to the requested compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate concluded the commission did not abuse its discretion in relying on the report of Dr. Lutz and, accordingly, the magistrate determined the requested writ should be denied.
 {¶ 3} Relator has filed objections to the magistrate's decision, largely rearguing those matters addressed in the decision. For the reasons the magistrate set forth in her decision, the objections are overruled.
 {¶ 4} Relator suggests the magistrate missed relator's argument and failed to address the issues relator raised. According to his objections, relator's basic premise is that "when the Industrial Commission relies upon a medical report that provides nothing more than a checkmark on a pre-printed form, and no information on the ACTUAL PHYSICAL IMPAIRMENTS arising from the allowed conditions in the claim, to find that the Relator can perform sedentary employment, then it must be found that the Industrial Commission has ignored its own standards contained in its EMPLOYABILITY ASSESSMENT MANUAL, and abused its discretion on this claim." (Emphasis sic.) (Objections 2-3.)
 {¶ 5} This court encountered a similar contention in State ex rel.Poneris v. Indus. Comm., Franklin App. No. 02AP-712, 2003-Ohio-2184. Addressing a medical report prepared in that case, the magistrate's decision, adopted by this court, indicated the doctor performed and recorded his physical examination and then checked a box reflecting that the claimant was capable of light-duty work. Concluding the commission could rely on such a report, this court denied the writ of mandamus in that case. In this case, Dr. Lutz has prepared a report very similar to that at issue in Poneris, and for the reasons set forth in that decision, as well as those set forth in the magistrate's decision here, we overrule relator's objections.
 {¶ 6} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Objections overruled; writ denied.
Brown, P.J., and Lazarus, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. :
David M. Dreyer, :
 Relator, :
v. : No. 04AP-461
 :
Anderson Township and : (REGULAR CALENDAR)
Industrial Commission of Ohio, :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on October 29, 2004 James A. Whittaker, LLC, and James A. Whittaker, for relator.
Jim Petro, Attorney General, and Andrew J. Alatis, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 7} Relator, David M. Dreyer, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation and ordering the commission to find that relator is entitled to the requested compensation.
Findings of Fact:
 {¶ 8} 1. Relator has two workers' compensation claims which are the subject of this mandamus action, and his claims have been allowed for the following conditions: "PEM283326: lumbar strain with S1 radiculopathy; PEL64807: acute low back strain, herniated lumbar disc arachnoiditis, atonic bladder."
 {¶ 9} 2. On June 6, 2002, relator filed an application with the commission seeking PTD compensation. In support of his application, claimant submitted reports from his treating physician Francis E. Dumont, M.D. In his report dated June 4, 2001, Dr. Dumont noted that since his 1987 surgery, relator has had increased chronic pain that eventually led him to retire on disability. Dr. Dumont concluded as follows:
Currently, we are treating his new disc protrusion conservatively, but he eventually will need another surgery at the L-5, S-1 level. David is permanently and totally disabled from any gainful employment. His condition has not improved, but has deteriorated. As he is considered permanently and totally disabled with The Police and Fire Disability 
Pension Fund, he should also be considered permanently and totally disabled with The Bureau of Workers' Compensation.
 {¶ 10} 3. In his February 25, 2002 letter, Dr. Dumont concluded as follows:
It is obvious that David is permanently and totally disabled from any gainful employment. His condition has only deteriorated over the years. He has seen many physicians during the past fifteen years hoping for a cure. Unfortunately, there is nothing surgically available to improve his condition. We can only try to manage his pain. As I mentioned earlier, he tried sedentary work until his chronic pain forced retirement. David is unable to sit, stand or walk for any length of time. He is unable to lift, push, pull. He is awakened several times during the night due to pain and numbness in his extremities. Besides the pain and numbness in both legs, he is losing his reflex in both legs. The pain is so severe at times, it affects his concentration level even with normal activities. * * *
 {¶ 11} 4. On August 20, 2002, relator was examined by James T. Lutz, M.D. Upon physical examination, Dr. Lutz noted the following findings:
Revealed a well-developed male who stood 5' 9", weighed 198-pounds, with a blood pressure of 122/90, a pulse of 72, and a respiratory rate of 15. Examination of the low back revealed mild loss of lordotic curvature and a level pelvis. There was a well-healed 7.0-centimeter surgical scar at the midline over the lumbosacral junction. Generalized tenderness was noted over the lumbosacral area, without evidence of spasm. Deep tendon reflexes of the lower extremities were 1+ at both patella, and absent at both ankles. Decreased sensation was noted over both lateral calves. Manual muscle testing of the extensor hallices and foot dorsiflexors was excellent bilaterally at 5/5. Straight leg raising was achieved at 50 degrees in both the sitting and supine positions with elevation of either leg causing central low back pain and pulling, and positive radicular signs to the ipsilateral foot. The claimant was unable to heel or toe walk on the left, and could only perform a small fraction of a normal squat. Range of motion studies were as follows: Flexion 20 degrees, extension 10 degrees, right lateral flexion 10 degrees, and left lateral flexion 10 degrees. Examination of the claimant's lower abdomen was unremarkable with no areas of tenderness or guarding, and no masses were noted.
 {¶ 12} 5. Thereafter, Dr. Lutz opined that relator had reached maximum medical improvement with regard to each of the allowed conditions and assessed a 13 percent whole person impairment for all of the allowed conditions. Thereafter, Dr. Lutz completed a physical strength rating form indicating that relator was capable of performing sedentary work as such is defined on the form itself as well as in the Ohio Administrative Code as follows:
Sedentary work means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from onethird to two-thirds of the time) to lift, carry, push, pull or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.
 {¶ 13} 6. Relator also submitted a vocational report prepared by William T. Cody, MS, CVE, CRC, CCM, dated September 8, 2002. Mr. Cody administered the Wide Range Achievement Test 3 and determined that relator read at a sixth grade level and that he performed math at the seventh grade level even though he had completed high school. With regard to his vocational potential, Mr. Cody noted that relator's prior work experience has been performed at light and very heavy levels of physical demand and that he acquired skills which would transfer to medium-level work. Mr. Cody concluded that relator had no experience or skills which would transfer to sedentary work. Mr. Cody noted that relator would be unable to adapt to a new kind of work activity due to his significant level of pain, his former manual work trade history, his education, his lower academic ability, and his physical limitations. As such, Mr. Cody concluded that relator was permanently and totally occupationally disabled.
 {¶ 14} 7. An employability assessment was prepared by Bill Braunig, M.S., CVE, ABDA, dated October 1, 2002. Based upon the reports of Dr. Dumont, Mr. Braunig concluded that relator was not employable. However, based upon the report of Dr. Lutz, Mr. Braunig concluded that relator could perform the following jobs immediately: "Election Clerk; Telephone Quotation Clerk; Microfim Document Preparer; Final Assembler; Bench Hand; Charge Account Clerk." Following appropriate academic remediation or brief skill training, Mr. Braunig concluded that relator could perform the following additional jobs:
"Assuming short term training; Clerk Typist; Wire Transfer Clerk; Data Entry Clerk; Hospital Admitting Clerk; Credit Reference Clerk."
 {¶ 15} 8. Mr. Braunig concluded that relator's age of 45 years classified him as a younger person and would not effect his ability to meet the basic demands of entry level work; that his high school education and vocational training would be considered a positive factor; and that his long history of unskilled and skilled labor would suggest his ability to meet the basic demands of entry-level employment. Furthermore, Mr. Braunig noted that relator did not report any issues with regard to reading, writing, or performing basic math, and this would suggest his ability to develop the necessary skills in order to meet the basic demands of entry-level employment.
 {¶ 16} 9. Relator's application was heard before a staff hearing officer ("SHO") on November 21, 2002, and resulted in an order denying the application. The SHO relied upon the medical report of Dr. Lutz and concluded that relator was capable of performing sedentary work. The commission also relied upon the vocational report of Mr. Braunig and then provided its own analysis of the nonmedical vocational factors:
The Staff Hearing Officer finds that the injured worker is 45 years of age with a high school education and vocational training as a paramedic and firefighter. The Staff Hearing Officer further finds that the injured worker is able to read, write, and perform basic math at at least the 7th grade level.
The Staff Hearing Officer finds that the injured worker's age of 47 [sic] years is an asset to the claimant with regards to his ability to return to and compete in the workforce. The Staff Hearing Officer further finds that the injured worker's ability to read, write and perform basic math, are assets to the injured worker with regard to his ability to return to work. The Staff Hearing Officer finds that the same ability to read, write and perform basic math are assets to the injured worker with regard to his ability to learn the new work rules, work skills, and work procedures necessary to perform some other type of employment. The Staff Hearing Officer further finds that the injured worker's tested academic levels are lower than what would be expected of a high school graduate who has performed the skilled employment activities of not only a firefighter, but a paramedic and a fire marshall. The Staff Hearing Officer finds, that the injured worker's history is evidence that the injured worker possesses the intellectual capacity to perform skilled employment activities in spite of his academic limitations. The Staff Hearing Officer finds that there is no basis for determining that the injured worker is not able to benefit from on-the-job training. The Staff Hearing Officer further finds that there is no basis for determining that the injured worker is not able to develop the skills necessary to perform entry level employment activities. The Staff Hearing Officer accepts the functional capacities opinion of Dr. Lutz and finds that the injured worker retains the functional capacity to perform employment activities which are sedentary in nature. The Staff Hearing Officer further finds that the injured worker has demonstrated average and above average aptitudes in his work history. The Staff Hearing Officer further finds, based upon the report of Mr. Braunig, that the injured worker is capable of performing the following jobs immediately: election clerk; telephone quotation clerk; microfilm document preparer; final assembler; bench hand; and charge account clerk. The Staff Hearing Officer therefore finds that the injured worker is capable of sustained remunerative employment and is not permanently and totally disabled. Injured worker's Application for Permanent Total Disability filed 06/06/02, is therefore denied.
 {¶ 17} 10. Thereafter, relator filed the instant mandamus action in this court. Conclusions of Law:
 {¶ 18} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v.Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 19} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 20} In this mandamus action, relator challenges the commission's order in one respect: relator contends that the medical report of Dr. Lutz cannot constitute some evidence upon which the commission could rely because Dr. Lutz did not specifically address relator's physical abilities to perform any job. Relator contends that Dr. Lutz's report actually goes to disability and not to impairment. Relator cites State exrel.
 Jennings v. Indus. Comm. (1982), 1 Ohio St.3d 101, in support of his argument. However, Jennings is not dispositive.
 {¶ 21} In Jennings, Dr. McCloud had written a report finding that the claimant was not permanently and totally disabled. However, in his deposition testimony, Dr. McCloud repudiated his prior conclusion. Regardless, the commission concluded that claimant was not permanently and totally disabled. In mandamus, the Supreme Court of Ohio noted that Dr. McCloud had concluded that claimant was not fit for sustained remunerative employment and was permanently and totally disabled, in direct conflict with his original report. As such, the court rejected the commission's contention that Dr. McCloud's deposition testimony did not detract from the probative value of his original report. The court held that, where a medical expert has, by deposition testimony, repudiated a conclusion previously made in a medical report, that report cannot constitute the evidence to support the order of the commission. That finding has no relevance in the present case.
 {¶ 22} As stated previously, Dr. Lutz had checked the box indicating that relator could perform sedentary work. On the form, the definition from the Ohio Administrative Code defining sedentary work was provided for Dr. Lutz. Thereafter, by checking that box, Dr. Lutz was stating that relator would be able to perform jobs, provided those jobs fit within the parameters of the definition of sedentary work. As such, even though Dr. Lutz did not specifically say that claimant could exert up to ten pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects, and that he could sit for the majority of an eight-hour day with some walking or standing for brief periods of time, by checking that box, he was stating that relator could perform work within those parameters.
 {¶ 23} In State ex rel. Poneris v. Indus. Comm., Franklin App. No. 02AP-712, 2003-Ohio-2184, this court overruled objections to a magistrate's decision where the doctor had indicated that the claimant could perform light-duty work by checking the appropriate box. As inPoneris, in this case, Dr. Lutz described in detail his clinical observations upon examination and noted relator's medical examination as well as his daily activities. The court agreed with the magistrate's conclusion that the amount of detail and explanation in a medical report goes to its credibility and weight, rather than its admissibility. Furthermore, by checking the category of sedentary work, Dr. Lutz's opinion did not consist solely of an assessment of percentage of impairment as opposed to the physical capacity for work. Furthermore, the magistrate rejected the contention that the commission has a legal duty to require its medical specialist to provide more than an opinion of the claimant's work category when rendering an opinion with respect to PTD compensation. This court's decision in Poneris is applicable to the facts of the present case as well, and Dr. Lutz's report does constitute some evidence upon which the commission could rely in denying relator's application for PTD compensation.
 {¶ 24} Based on the foregoing, it is the magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation and this court should deny relator's request for a writ of mandamus.